P. SILVERMAN & SON *v.* UNITED STATES (No. 4474)[1]

[1] C. A. D. 292.

United States Court of Customs and Patent Appeals, December 11, 1944

*Henry L. Ziegel* for, appellant.

*Paul P. Rao*, Assistant Attorney General (*Alfred A. Taylor, Jr.*, and *Charles J. Miville*, special attorneys, of counsel), for the United States.

[Oral argument October 5, 1944, by Mr. Ziegel and Mr. Miville]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges

BLAND, Judge, delivered the opinion of the court:

In 1942 there was imported from Canada, at the port of Portland, Maine, a shipment of discarded paper-mill felts, which were classified as "wool wastes not specially provided for" and assessed with duty at 14 cents per pound under paragraph 1105 of the Tariff Act of 1930,

as modified by the trade agreement with the United Kingdom, T. D. 49753, 74 Treas. Dec. 253, 272. The action of the collector in so classifying the merchandise was in conformity with a directive of the Commissioner of Customs, dated July 14, 1941, T. D. 50428, 77 Treas. Dec. 14, which is stated by the Government to have been prompted by this court's decision in *P. Silverman & Son* v. *United States*, 27 C. C. P. A. (Customs) 324, C. A. D. 107.

In said order the Commissioner of Customs, after stating that paper-mill felts, old but capable of being used after shredding in making clothing, are properly dutiable as wool waste, not specially provided for, at 14 cents per pound under the British Trade Agreement rather than under the provision for "wool rags," pointed out that this was a higher rate "than that heretofore assessed under a uniform practice," and that it should be applied only to such merchandise entered for consumption or withdrawn from warehouse for consumption after 30 days after publication of his order in the TREASURY DECISIONS.

Several claims were made in the protest, but only one is relied upon here, to wit: that the merchandise is dutiable at 9 cents per pound as "wool rags," either directly or by similitude. The claim for classification under paragraph 1555 as "Waste, not specially provided for" was expressly waived in this court, and appellant made no assignment of error against the trial court's action in failing to hold the instant merchandise to be dutiable under that provision. The claim under paragraph 1558 as "articles manufactured, in whole or in part, not specially provided for," although the subject of an assignment of error, was not urged or discussed in this court, either in brief or at oral argument, and will be treated as abandoned.

The United States Customs Court, First Division, overruled the protest, stating that it was "following the reasoning" of this court's decision in the prior *Silverman* case, *supra*. From the judgment of the trial court the importer has here appealed.

We here quote paragraph 1105 of the Tariff Act of 1930 in tabular form for purposes of comparison with the paragraph as modified by the trade agreement hereinbefore referred to:

PAR. 1105.

(a) Top waste, slubbing waste, roving waste, and ring

| | |
|---|---|
| waste | 37 cents per pound; |
| garnetted waste | 26 cents per pound; |
| noils, carbonized | 30 cents per pound; |
| noils, not carbonized | 23 cents per pound; |
| thread or yarn waste | 25 cents per pound; |
| card or burr waste, carbonized | 23 cents per pound; |
| not carbonized | 16 cents per pound; |
| all other wool wastes not specially provided for | 24 cents per pound; |
| shoddy, and wool extract | 24 cents per pound; |
| mungo | 10 cents per pound; |
| wool rags | 18 cents per pound; |
| flocks | 8 cents per pound. |

(b) Wastes of the hair of the Angora goat, Cashmere goat, alpaca, and other like animals, shall be dutiable at the rates provided for similar types of wool wastes.

Paragraph 1105 of the Tariff Act of 1930, as modified by the said trade agreement, reads as follows:

| Tariff Act of 1930; paragraph | Description of article | Rate of duty |
|---|---|---|
| 1105 (a) and (b) | Wool and hair wastes: | |
| | Top waste, slubbing waste, roving waste, and ring waste | 34¢ per lb. |
| | Garnetted waste | 18¢ per lb. |
| | Noils, carbonized | 21¢ per lb. |
| | Noils, not carbonized | 16¢ per lb. |
| | Thread or yarn waste | 15¢ per lb. |
| | Card or burr waste, carbonized | 18¢ per lb. |
| | Card or burr waste, not carbonized | 14¢ per lb. |
| | Wool wastes not specially provided for | 14¢ per lb. |
| | Shoddy, and wool extract | 14¢ per lb. |
| | Mungo | 9¢ per lb. |
| | Wool rags | 9¢ per lb. |
| | Flocks | 5¢ per lb. |

The trial court, quoting from the brief of plaintiff (appellant here), described the importation involved as follows:

Old paper-mill felts are a discarded article of the paper-making industry. They represent felts which have outlived their usefulness in the manufacture of paper, and *have no further commercial value except for the recovery of their component wool fibers by being processed to a fibrous condition known as wool shoddy. Their chief use, after being discarded by paper mills, is in the manufacture of wool shoddy.* These felts are shredded to reduce them to fiber form and then carded or garnetted so as to produce a mass of wool fibers suitable for use in the spinning of yarn to be made into cloth. [Italics by the trial court.]

To the above description it may be added that the imported felts varied in size, ranging from 15 to 18 feet in width and 50 to 75 feet in length.

The trial court, in substance, held that the importation at bar did not fall within the common meaning of the term "rag," citing Funk & Wagnalls New Standard Dictionary, after stating that the importer had not properly established a commercial designation so as to embrace the imported merchandise within the term "wool rags." It also held that under this court's holding in the *Silverman* case, *supra*, the merchandise, being material for shoddy and competitive with wool, properly responded to the term "wool wastes not specially provided for." Since it held that the merchandise was provided for as aforesaid, it found against the claim of appellant under the similitude paragraph.

In this court appellant attempts to distinguish the *Silverman* case by pointing out that it involved the importation of woolen dryer felts which were used for purposes other than in the remanufacture of woolen articles; that the holding of the trial court in that case that the merchandise was not wool rags was not disputed; that the issue pre-

sented to this court in that case involved the competition between the provisions "wool wastes not specially provided for" and "Waste, not specially provided for"; and that the question as to whether or not the merchandise there involved was wool rags was not determined by this court. Appellant therefore argues, contrary to the contention of the Government, that the *Silverman* case is not controlling of decision here.

On that particular phase of the question, this court in the *Silverman* case stated:

* * *. Since it is conceded here that the classification [woolen rags] is wrong, and since it would seem clear that the imported articles are not the kind of woolen rags for which provision is made in said paragraph 1105, we need give no further consideration to the woolen rag question.

We were there called upon to determine whether or not the woolen dryer felts, which were not suitable for any textile remanufacture because of the intense heat to which they had been subjected, but which were used for wiping and abrasive purposes in the steel industry, were "wool wastes" within the meaning of that term in said paragraph 1105.

The appellant in the instant case was the appellant there, the same counsel appearing for appellant in both cases. In this court in that case, while it was not an issue, counsel, in urging a certain construction of the paragraph, took the position that the so-called Palmer or sanforizing blankets (dryer felts), which were used in this country to brush away the oxidation from steel before it was rolled, were not wool rags for two reasons: first, because they were not competitive with wool (which circumstance prompted this court's holding that the merchandise there was not a wool waste) and second, because they were too large in size (3 to 40 feet in width and 5 to 50 feet in length) to fall within the common meaning of the term "rags." This court, in its decision, found it unnecessary to consider the woolen-rag phase of the case.

After reviewing at great length the legislative history, which included information furnished the committees of Congress by the United States Tariff Commission, the pertinent House and Senate committee reports, and various court decisions, we concluded in the *Silverman* case that in making said provision in paragraph 1105 for "all other wool wastes not specially provided for," Congress did not intend to include wastes such as those involved in that case, because they did not come into competition with wool or affect its market in any particular.

The Government argues here that since the importation involved in this case admittedly is of that class which is used exclusively or almost exclusively in the making of shoddy, which competes directly with wool in the textile industry, it follows necessarily that it is a

wool waste which is not specially provided for and therefore is dutiable as assessed.

The importer contends, however, that even if it be concluded that the importation is a wool waste within the meaning of paragraph 1105, it also responds to the term "wool rags," which is more specific than "wool wastes not specially provided for."

We agree with the contention of appellant that the *Silverman* case, *supra*, is not controlling of decision of the issues here presented. In that case the goods had been classified for and assessed with duty under paragraph 1105 of the Tariff Act of 1930, as "woolen rags." The majority of the trial court held that under the common meaning of the term "rag," the merchandise was not properly classified by the collector, but that it was waste, and that since it was of wool, it responded to the term "all other wool wastes not specially provided for." Brown, Judge, dissented in that case, stating that in his opinion the merchandise was not "wool wastes not specially provided for" since it was used for wiping, abrasive, and other purposes and could not be used in the manufacture of wool garments, as were certain kinds of wool rags and other articles enumerated in the paragraph. He was of the opinion that the merchandise was therefore properly dutiable as "Waste, not specially provided for," under paragraph 1555 at 10 per centum ad valorem.

In that case, the sole question presented here was under which of the two provisions—"all other wool wastes not specially provided for" and "Waste, not specially provided for"—the goods should have been classified. We held that the merchandise, which did not compete in the woolen industry, was not the kind of waste, although composed of wool, which Congress had in mind when it used the term "all other wool wastes not specially provided for."

We think that holding was sound. We there had before us goods which were not competitive in the woolen industry, and we now have at bar merchandise which does come in direct competition with wool. However, the mere fact alone that the instant merchandise is competitive with wool is not sufficient, in view of other considerations to which we shall presently allude, to require a holding that the instant merchandise properly responds to the term "all other wool wastes not specially provided for."

We are of the opinion that Congress, in framing the provision for "all other wool wastes not specially provided for," did not contemplate that merchandise of the kind at bar should find classification under that provision. We are brought to this conclusion by a consideration of the context of said paragraph and the legislative history bearing thereon.

In the Summary of Tariff Information, 1929, Vol. 2, p. 1688, which was before the Ways and Means Committee-of the House when the Tariff Act of 1930 was being prepared, we find the following:

WOOL WASTES AND BY-PRODUCTS

Description and uses.—Paragraph 1105 covers the materials which are referred to in paragraph 1103 as wool wastes and wool-waste material. The term *"wool waste"* does not imply something that is valueless but rather *a part of the original raw material that has been discarded*, at least temporarily, *in the sequence of manufacturing processes.* A part of this waste is remanufactured in the mills where made and a part is sold for manufacture elsewhere. *Wool-waste material includes wool rags and the fibers recovered therefrom.* Any of the foregoing may be referred to as a by-product, although this term is not used in commercial designations. [Italics ours.]

\*    \*    \*    \*    \*    \*    \*

"All other wool wastes not specially provided for" include mainly bur waste and card waste. Bur waste consists of particles of wool clinging to burs which have been knocked out of the wool by the bur rollers on a card or on a bur picker. Card waste is waste made at the card, mainly short fibers which became imbedded in the wire card clothing.

\*    \*    \*    \*    \*    \*    \*

Woolen rags, the term used in the tariff act, include wool rags containing either worsted or woolen yarns.. Wool rags vary widely in quality and in price. *Old wool rags* known as "knits" *are obtained from discarded clothing, wholly or in part of wool, such as suits, dresses, sweaters, and stockings. New wool rags* known as "clips" *are clippings from the cutting tables of ready-made suit and cloak houses, tailor shops, etc.*. Wool rags are usually reduced to the state of shoddy and the reclaimed wool fibers are largely used in woolen manufacture. Rags that are too inferior for such use are utilized in roofing felts. [Italics ours.]

To substantially the same effect is the following from the Summary of Tariff Information, 1921, p. 957.

WOOL WASTES AND WASTE MATERIALS

*Description and uses.*—Wool wastes consist of the materials discarded in wool manufacture and as a general term may also include what are sometimes known as "wool waste materials," such as wool rags and the shoddy and mungo obtained therefrom. \* \* \* "Wool wastes not specially provided for" include card wastes, made on either the woolen or the worsted card; bur wastes, which consist of small particles of wool clinging to burs (this waste is created by special "burring" rollers which are generally attached to the carding engine, and has to be carbonized before being used again); sweepings and oily wastes; and others.

It will be observed from the above quotations that the attention of Congress was called to the fact that there were "wool wastes" and "wool-waste materials" covered by paragraph 1105. In other words, there were "wool wastes" which came in competition with wool and also "wool-waste materials" which, when processed in a certain manner, came in competition with wool.

The paragraph as enacted began by naming a number of wool wastes *eo nomine.* All these wool wastes, so named, are produced

in the woolen-manufacturing operations prior to the weaving process and are not "wool-waste materials." Then Congress used the phrase under consideration here—"all other wool wastes not specially provided for." It cannot be disputed, and the record so indicates, that a number of other wastes of considerable commercial impor- tance, which are produced in the manufacturing processes prior to weaving, were not eo nomine designated in said paragraph. Such wastes would properly fall under the catch-all phrase "all other wool wastes not specially provided for."

At the trial, appellant introduced Exhibits 17, 19, 22, 25, and 26. Exhibit 17 is "hatters' waste;" a waste resulting from the making of hatters' felt. Exhibit 19 is "brush waste," which is brushed from the spinning frames. Exhibit 22 is "spinners' waste," and exhibit 25 is "flyings," both of which, like brush waste, result from the spinning operations. Exhibit 26 is "dye house waste," which results from a combing treatment of the dyed yarns. See American Wool Hand- book, 1st Ed., pp. 185–197, 584–592, 672; Spons' Encyclopaedia of the Industrial Arts, Manufactures, and Commercial Products, Vol. III, pp. 2047–2078; United States Tariff Commission Report No. 120, 2d Series (1937) "Wool Prices," with a "Comprehensive Glossary of Wool Terms," p. 54.

Some of these wastes, not eo nomine designated, may have been of less importance when the question of competition was considered than some of the other wastes eo nomine named, and therefore different rates of duty were·applied to various named wastes and to others which, although well-recognized wool wastes, Congress did not see fit to include eo nomine in paragraph ·1105. It would seem, therefore, that the term "all other wool wastes not specially provided for" was intended to include such wastes as were of similar character to those specifically named. It will be observed that all the wastes specifically named, as well as those, not eo nomine provided for, to which we have referred as obviously falling within the term "all other wool wastes not specially provided for" (and there are others of the latter class which we need not list here), do not require shredding, as do wool rags or as does the merchandise at bar. Some of the wastes named eo nomine were given a high rate of duty because their characteristics made them highly competitive, and others, not so competitive, were given lower rates. These rates ranged from 37 cents per pound to 16 cents per pound. As an example of this, Congress provided that noils, carbonized, should bear duty at the rate of 30 cents per pound. Noils are obtained in the combing process, by separating the short from the long fibers. The short fibers are known as the noils and are "as good as virgin wool except lengths." American Wool Handbook, supra, p. 186.

After naming several wastes specifically and then making a catch-all

provision for "all other wool wastes not specially provided for," Congress next saw fit to provide for shoddy, wool extract, mungo, wool rags, and flocks at various rates of duty. For instance, it placed a duty of 24 cents per pound on shoddy, the same duty it had applied to "all other wool wastes not specially provided for."

Shoddy results from the shredding and grinding of all-wool cloths, such as certain grades of wool rags. It has longer fibers and is more valuable than mungo, upon which Congress placed a duty of 10 cents per pound. Mungo is recovered from hard-twisted woolen or worsted fabrics and is used to give body to certain cloths, or in the making of cheaper woolen blends. It is also employed for stuffing purposes. Wool extract consists of woolen fibers extracted, by a process of shredding and carbonization, from such articles as rags and discarded woven fabrics which are composed in part of some material other than wool. The carbonizing treatment removes the vegetable fibers, and the wool fibers remain. Wool extract is used in blends with wool and wool substitutes in low-grade woolens. Flocks are very short, fluffy fibers removed from fabrics in the finishing processes of fulling, teasling, or shearing. They are used for pressing into woolen fabrics to add face or fullness and, to some extent, in the manufacture of felts and embossed wallpapers. See the authorities, *supra*.

It would be difficult to understand why Congress would want to place the same rate of duty on discarded wool paper-mill felts, as much as 75 feet in length, unshredded, as it would upon the finished shoddy, because the record shows, and the textbooks on wool confirm the fact, that much processing and labor must be expended upon the instant merchandise to produce shoddy. It is to be noted that Congress provided in the same paragraph for a duty of 18 cents per pound upon wool rags. It is easy to believe that Congress desired a lower rate of duty on rags before they went into the making of shoddy, than upon the shoddy itself.

From this reasoning, it would seem to follow that Congress did not contemplate that merchandise like that at bar, in its crude unshredded state, should take the same duty (24 cents per pound) as do wool wastes not specially provided for and as does shoddy itself. This is especially true when we consider the fact that the instant merchandise, as the record undeniably shows, is used for the same purpose as the better grade of wool rags, namely, for the making of shoddy, and the fact that practically the same process is used to convert them into shoddy. It would also seem that on account of the size of the instant merchandise, perhaps a little more labor would be required to convert it into shoddy than is required in the case of the average size rags.

For the reasons stated, therefore, we must hold that the Government's contention here for classification in accordance with that of the collector is without merit.

The next issue to determine is whether or not appellant is right in its contention that the trial court erred in holding the involved goods not to be "wool rags" within the provision in controversy. In the court below the appellant introduced the testimony of seven witnesses, and the Government that of one witness. All of appellant's testi- mony, uncontradicted, is to the effect that paper-mill felts like those at bar are bought and sold as wool rags; and this is not surprising because, admittedly, they had been so treated by the customs officials at various times.

The trial court held that the importer had failed, by its proof, to make a case on commercial designation. Appellant in this court does not contend that it has established a commercial meaning different from the common meaning of the term "wool rags," in accordance with principles laid down by this and other courts. It has assigned no error on this question which warrants a consideration of the record with a view to determining the correctness of this finding by the tribunal below. Furthermore, in the brief of counsel for appellant, it is specifically stated that—

In our view, there is no question of commercial designation involved, nor should it be necessary to a determination of the issue herein.

The trial court stated that the testimony of the witnesses should be accepted "merely as the witnesses' personal opinions," and that its consideration was therefore confined to the common meaning of the term "rag." Having found that there was no proper commercial proof, the trial court of course was right in its conclusion that it was confined to the common meaning of the term. It quoted from Funk & Wagnalls New Standard Dictionary, as follows: "A fragment of cloth torn or partly torn from its original connection: especially, a worn, frayed, or torn bit of a garment; hence, figuratively, a fragment, small amount, or semblance of anything; as, linen *rags*."

In the New Oxford English Dictionary we find "rag" defined as follows:

A small worthless fragment or shred of some woven material; *esp.* one of the irregular scraps into which a piece of such material is reduced by wear and tear.

None of the merchandise involved in the case at bar, according to the holding of the court below (and the record supports its holding), is of such size and dimensions as to be called a fragment or piece of cloth, so as to respond to the common meaning of the term "rag." There may be other considerations not mentioned by the trial court and not referred to in the argument of counsel which would militate against regarding the merchandise at bar as rags. But we are certain that for the reasons stated by the trial court the merchandise should not be so regarded, at least within the common meaning of the term.

The trial court, having found that the merchandise was "wool wastes not specially provided for," dismissed appellant's contention

concerning similitude. In this court appellant, as before stated, does not, and could not on the instant record, contend that the goods are properly classifiable as waste not specially provided for, under paragraph 1555. It is not apparent, however, that the goods are not enumerated, because, in any event, if there is no other place in the tariff act where they are provided for, they obviously are waste. Since the similitude provision of the tariff act cannot be applied to an imported article unless that article is not enumerated elsewhere in the act, we cannot consider the question of similitude. It may be, and the record so indicates, that the goods at bar are similar in material, quality, texture, or use to wool rags; but until it is determined that such merchandise is not enumerated under such provisions as "Waste, not specially provided for," we have no right to resort to the similitude provision.

The remaining issue to determine relates to appellant's contention that our decision in the instant case should be influenced, if not controlled, by a consideration of what appellant designates as a "long-continued administrative practice." There is no satisfactory evidence of record to show a long-continued practice on the part of customs officials in classifying merchandise of the particular character here involved as wool rags. There is some testimony on the part of the Government appraiser from Portland, Maine, which is not definite, but which suggests the idea that small pieces of paper-mill felts such as would be cut from merchandise like that at bar were passed as wool rags; but there is no showing that this was uniformly done or over what period of time the practice was followed.

The commissioner's order, T. D. 50428, which brought about the reclassification of the merchandise, announced, as hereinbefore pointed out, that the ruling would result in the assessment of paper-mill felts at a higher rate "than that heretofore assessed under a uniform practice." This fact, if accepted in lieu of proof, does not establish a long-continued administrative practice. But, even if long-continued administrative practice had been established, that fact alone would not be controlling. It would be important in the consideration of the applicability of the doctrine of legislative approval of long-continued administrative practice, but the application of that doctrine is not urged here.

As we understand appellant's position on this point, it is that since, as it contends, there had been a long-continued administrative practice of classifying merchandise like that at bar as wool rags, the relationship between the Government and the importer should not be disturbed. Reliance is placed upon our statement in *United States* v. *Basket Importing Co.*, 13 Ct. Cust. Appls. 98, T. D. 40941, to the effect that in close cases, technicalities should not cause a reversal of settled, well-understood, and "acquiesced-in" administrative practice.

Of course, it is a consideration which, under certain circumstances, would have great weight in the decision of a close issue; but to hold that, in all cases, administrative practice, even though long-continued and uniform throughout the United States, should bar a subsequent change in classification if the circumstances warranted making such a change would perpetuate error until changed by Congress, would greatly hamper the proper administration of the customs laws, and therefore would be a dangerous principle to follow.

Quite frequently this court, in interpreting statutes, has relied strongly upon the doctrine of legislative approval of judicial interpretation and occasionally upon the kindred doctrine of legislative approval of long-continued administrative practice, the former being a very potent rule of interpretation, the latter more carefully and less often applied. It has become proverbial, not requiring citation of authority, that rules of interpretation are but the tools used by the courts in their endeavor to ascertain the legislative intent. The two doctrines last above mentioned may be resorted to by the courts regardless of whether or not raised by the parties in the trial of the case.

The United States Customs Court properly overruled appellant's protest claim that the instant merchandise should have been classified as wool rags, either directly or by similitude; and its judgment in that respect is *affirmed* without approving the classification of the collector.